## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BURTON LEE SMITH, | : | |
| | : | Civil Action No. 16-1373(MCA) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEVEN JOHNSON and | : | |
| THE ATTORNEY GENERAL OF THE | : | |
| STATE OF NEW JERSEY, | : | |
| | : | |
| Respondents. | : | |
| | : | |

**MADELINE COX ARLEO, District Judge**

### I.   INTRODUCTION

This matter has been opened to the Court by the pro se
Petition pursuant to 28 U.S.C. § 2254 (ECF No. 1 ("Petition"))
of Burton Lee Smith ("Petitioner"). For the reasons explained
below, the Court will deny the Petition with prejudice and will
deny a certificate of appealability.

### II.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

#### A. Factual Background

This Court, affording the state court's factual
determinations the appropriate deference, *see* 28 U.S.C. §
2254(e)(1),[1] relies upon the fact recitation by the Appellate

---

[1] "In a proceeding instituted by an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of
a State court, a determination of a factual issue made by a

Division of the Superior Court of New Jersey ("Appellate Division") in its opinion affirming denial of post-conviction relief ("PCR"). *State of New Jersey v. Smith*, No. A-2778-13T1, 2015 WL 5943692 (N.J. Super. Ct. App. Div. Oct. 7, 2015).

James Spates ("Spates") had just cashed his pay check when a man armed with a knife grabbed him; stabbed Mr. Spates in his arm, abdomen, and back; took his money; and entered the front passenger seat of a black Ford Explorer with a North Carolina license plate. A young boy witnessed the robbery and assault, and a video surveillance camera captured the crime. Mr. Spates gave the police a description of the assailant, the Explorer, and the license plate number. *Smith*, 2015 WL 5943692, at *1.

The next day, police arrested Petitioner and co-defendant Christina Rourk-Moore ("Rourk-Moore"). When police frisked Petitioner, they found a folding knife in his rear pocket. DNA testing matched Mr. Spates's blood and the knife's residual blood. *Id. See also State v. Smith*, 2012 WL 2196669, at *1 (N.J. Super. Ct. App. Div. June 18, 2012).

## B. **Procedural History**

A grand jury charged Petitioner with robbery, two counts of aggravated assault, and two weapons offenses. *Id.*

State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Petitioner and Rourk-Moore were tried together. Petitioner's counsel did not move for a severance. Rourk-Moore had given two post-arrest statements to police -- the first typewritten and the second videotaped. The prosecutor's opening statement said that Rourk-Moore had initially lied under oath, swearing she had not been at the scene, but later admitted being present when the robbery occurred. During trial, however, the prosecutor elicited testimony from Detective Michael Ricci only that Rourk-Moore admitted to owning the Ford Explorer and being in the driver's seat when the robbery occurred. Once all parties rested, Rourk-Moore moved for a mistrial, claiming prejudice from the prosecutor's opening that she had lied in two statements and then not producing the statements at trial. The Honorable Joseph A. Perfilio, J.S.C. permitted the prosecution to re-open its case. *Id*.

The State recalled Detective Ricci. He testified that Rourk-Moore first denied being at the scene, but later admitted being there -- after being confronted with the videotape. In her second statement, she claimed she had initially lied because Petitioner was in the next room during the interview, and she was afraid Petitioner could hear her. *Id*. at *2.

A jury found Petitioner guilty as charged. Judge Perfilio merged the assault and weapons offenses into the first-degree robbery offense and sentenced Petitioner to an extended fifty-

3

year custodial term subject to the No Early Release Act, New
Jersey Stat. Ann. § 2C:43-7.2 ("NERA"). *Smith*, 2015 WL 5943692,
at *1; ECF No. 15-25 at 12-13.

Petitioner directly appealed his conviction and sentence.
(ECF Nos. 15-1 and 15-3.) On June 18, 2012, the Appellate
Division rejected his arguments. *Smith*, 2012 WL 2196669, at *7.
On December 13, 2012, the New Jersey Supreme Court denied
certification. (ECF No. 15-5; ECF No. 15-7.)

On February 22, 2013, Petitioner filed a PCR petition. (ECF
No. 15-8.) On or about October 11, 2013, Petitioner's counsel
filed a supporting brief. (ECF No. 15-9.) On December 17, 2013,
the Law Division of the Superior Court of New Jersey ("Law
Division") denied the PCR application. (ECF Nos. 15-11 and 15-
26.) Petitioner appealed. (ECF No. 15-12.) On October 7, 2015,
the Appellate Division affirmed the Law Division. *Smith*, 2015 WL
5943692, at *3. The New Jersey Supreme Court denied
certification on January 15, 2016. (ECF No. 15-17.)

Petitioner filed his § 2254 Petition in March 2016. (ECF
No. 1-1 at 4.) The Petition sets forth eight claims: (1) denial
of Petitioner's right to a fair trial when the trial court
allowed prejudicial testimony during witness cross-examination
(*id.* at 8); (2) denial of fair trial when the judge failed to
adequately instruct the jury as to a witness's testimony (*id.* at
11); (3) trial court error from failure to give a *sua sponte*

4

instruction as to the photo array the police showed the victim (*id*. at 12); (4) excessive sentence (*id*. at 14); (5) denial of impartial jury when the judge allowed a sleeping juror to deliberate (*id*. at 16); (6) violation of Petitioner's right to confront his accuser (*id*. at 17); (7) denial of fair trial when the prosecutor introduced testimony about the photo lineup without introducing a recording of the victim and officer's lineup conversation (*id*. at 18); and (8) ineffective assistance of counsel from failure to move for a severance of Petitioner and Rourk-Moore's trial. (*Id*. at 19.) Respondents filed an Answer (ECF No. 15), and Petitioner then filed a traverse. (ECF No. 17.)

## III.  **STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003). District courts must afford great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where state courts have adjudicated a claim on the merits, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). *See Conover v. Main*, 601 F. App'x 112, 114 (3d Cir. 2015) (citing 28 U.S.C. § 2254(d)).

Federal law is "clearly established" for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

6

from th[e Supreme] Court's decisions but unreasonably applies
that principle to the facts of the prisoner's case." *Williams*,
529 U.S. at 413. With regard to 28 U.S.C. § 2254(d)(1), a
federal court must confine its examination to evidence in the
record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

The petitioner carries the burden of proof, and review
under § 2254(d) is limited to the record that was before the
state court that adjudicated the claim on the merits. *See
Harrington*, 562 U.S. at 100. "When reviewing state criminal
convictions on collateral review, federal judges are required to
afford state courts due respect by overturning their decisions
only when there could be no reasonable dispute that they were
wrong." *Id.* at 102-03. Where a petitioner challenges an
allegedly erroneous factual determination of the state courts,
"a determination of a factual issue made by a State court shall
be presumed to be correct [and the] applicant shall have the
burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2254(e)(1).

Under these standards, the relevant state court decision
that is appropriate for federal habeas corpus review is the last
reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256,
289-90 (3d Cir. 2008). Furthermore, "when the relevant state-
court decision on the merits ... does not come accompanied with
... reasons ... [w]e hold that the federal court should 'look

7

through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

## IV.  ANALYSIS

### A. Grounds One, Two, Three, and Seven: Challenges To Alleged Trial Court Evidentiary Errors

The same habeas principle governs Grounds One, Two, Three, and Seven, which the Court summarizes below. That law requires this Court to deny these four grounds on the merits.

#### 1. State Court Evidentiary Rulings Are Not Reviewable On Habeas, Unless Fundamentally Unfair In Violation Of Due Process

An erroneous evidentiary ruling is not itself grounds for habeas relief. To rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights. *See Romano v. Oklahoma,* 512 U.S. 1, 12-13 (1994); *see also Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir. 2001) (to show that an evidentiary error rises to the level of a due process violation, a petitioner must show "that it was of such magnitude as to undermine the fundamental fairness of the entire trial"); *Kontakis v. Beyer*, 19 F.3d 110, 117, 120 (3d Cir. 1994) (evidentiary rulings do not give rise to federal habeas relief unless they had a "substantial and injurious effect or influence in determining the jury's verdict") (internal

citations omitted). The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352 (1990).

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). Nor do federal courts' habeas powers permit reversal of convictions based on a belief that a trial judge incorrectly applied a state evidentiary rule. The only question on habeas is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. Federal courts must afford the states deference in determinations regarding evidence and procedure. *See Crane v. Kentucky,* 476 U.S. 683, 690 (1986). "[A] state court's misapplication of its own law does not generally raise a constitutional claim. [F]ederal courts ... may intervene only to correct wrongs of constitutional dimension." *Smith v. Horn,* 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), *cert. denied,* 522 U.S. 1109 (1998). Furthermore, purported trial court errors such as failure to give a particular jury instruction are subject to harmless error analysis. *Lewis v. Pinchak*, 348 F.3d 355, 359 (3d Cir. 2003).

9

### 2. Ground Ones and Two: (a) Denial Of Fair Trial, And (b) Trial Court Error, From Prejudicial Testimony Elicited By Rourk-Moore's Counsel During Detective Ricci's Cross-Examination

Ground One alleges that Petitioner was denied his right to a fair trial when, after Judge Perfilio allowed the State to re-open its case, Rourk-Moore's counsel elicited prejudicial testimony during Detective Ricci Judge's cross-examination. (ECF No. 1 at 8-9 ("Fair Trial Claim").) Closely related to this claim is Ground Two's allegation of trial court error from failing to adequately instruct the jury pursuant to N.J. R. Evid. 404(b)[2]. Petitioner claims Judge Perfilio should have given an instruction regarding Detective Ricci's testimony that Rourk-Moore feared Petitioner overhearing her police statement and had a prior restraining order against him. (*Id.* at 11 ("Rule 404(b) Claim").)

At trial, Rourk-Moore testified that, *inter alia*, she had a prior restraining order against Petitioner. (ECF No. 15-22 at 5.) After Judge Perfilio granted Rourk-Moore's prejudice-based motion for mistrial at the conclusion of trial (ECF No. 15-22 at 12, 19-27, 29), Detective Ricci testified. He said that in Rourk-Moore's

---

[2] "Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J. R. Evid. 404(b).

typewritten statement to police on March 7, 2009, she: "indicated that she was with her ailing mother in a nursing home" at the time of the crime; and denied being in Hillside when the incident occurred. (ECF No. 15-22 at 32.) After her first statement, police showed Rourk-Moore the surveillance video from the check cashing store. (*Id.*) In Rourk-Moore's videotaped statement to police on March 8, 2009, she admitted that she had lied in her first statement because "[Petitioner] was in the next room and she was afraid he could hear her." (*Id.* at 33.)

In jury summation by Rourk-Moore's public defender, he referred to the testimony jurors had heard about Rourk-Moore's supposed reason for lying in her first statement to police. (*Id.* at 6, 54-55 ("[T]here was a restraining order ... [Ms. Rourk-Moore] does have ... more interest than just her involvement to worry about. It's what might happen if she dimes this guy out and he's not arrested because of the nature of the relationship").)

During Petitioner's direct appeal, the Appellate Division rejected the Fair Trial Claim and the Rule 404(b) Claim. The court ruled that Detective Ricci's "fleeting reference" to the restraining order and his testimony about Rourk-Moore's fear of Petitioner overhearing her police statement did not unduly prejudice Petitioner. The court explained as follows:

> The evidence implicating defendant as Spates's assailant was overwhelming. The manner in which defendant separated Spates from his

11

> weekly wages was sudden and violent. The
> existence of a domestic violence restraining
> order suggests that defendant is a violent
> man; however, other evidence already
> established that fact. The possibility of
> undue prejudice to defendant from these two
> facts is too remote to conclude that the
> references to both produced an unjust result.

*Smith*, 2012 WL 2196669, at *3.

During appeal of PCR denial, the Appellate Division expressly relied on its direct appeal opinion, and the court "reach[ed] the same conclusion" in the PCR appeal. *Smith*, 2015 WL 5943692, at *2.

This Court finds that the Fair Trial Claim and the Rule 404(b) Claim fail on the merits, for these reasons:

(a) *Grounds One and Two Fail The Habeas Standard of Review*: Grounds One and Two do not meet § 2254's standard of review because: (1) As it is based entirely on New Jersey law, the Rule 404(b) Claim does not raise any violation of the U.S. Constitution, laws or treaties. This Claim cannot reasonably be construed as a federal claim. Petitioner has not demonstrated that the trial court's allowance of Detective Ricci's testimony violates a federal right. The Rule 404(b) Claim does not include any reference to a specific federal constitutional guarantee; and (2) Petitioner has not identified any clearly established federal law, as determined by the United States Supreme Court, that the state courts unreasonably applied or as to which their rulings were contrary regarding the Fair Trial Claim or Rule 404(b) Claim. 28

12

U.S.C. § 2254.

(b) *Grounds One and Two Do Not Demonstrate Errors OF Constitutional Measure To Warrant Habeas Review*: As Grounds One and Two allege general improprieties from evidence-related determinations during the state trial, their claims are not reviewable in habeas, unless the errors resulted in a fundamentally unfair proceeding and violated due process. Neither the Fair Trial Claim nor the Rule 404(b) Claim, though, allege that the purported evidentiary errors were of constitutional magnitude. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984). The "overwhelming" evidence of Petitioner's guilt, *see* 2015 WL 2196669, at *3, underscores this point as to both Grounds One and Two.

As to Ground One, for example, Mr. Spates identified Petitioner as his assailant on multiple occasions with accuracy. At first, Mr. Spates explained to the responding officer that a 5'4" or 5'5" African-American with dreadlocks robbed him and entered a dark Ford Explorer with temporary North Carolina tags after the assault. (ECF No. 15-20 at 31, 37.) In his hospital bed, Mr. Spates identified Petitioner in a photograph array, although he said in order to be certain, he would have to see him in person. (*Id.* at 74-76.) When he saw Petitioner at trial, Mr. Spates testified that he had "no doubt" in his mind that Petitioner was the person who committed the robbery. (*Id.* at 76.) Mr. Spates also identified a brownish-beige jacket worn by his assailant, which

13

the police found in the black Ford Explorer. (ECF No. 15-21 at

84.) When shown this coat in court, Mr. Spates had "no doubt" that

this was the jacket worn during the robbery. (*Id.*) Further, an

eyewitness described the robber as a black individual with

dreadlocks who entered the Ford Explorer's passenger seat. (ECF

No. 15-20 at 21-22.) The store's surveillance video corroborated

these identifications. (ECF No. 15-21 at 33 and 64.) Further,

police arrested Petitioner as he entered the Ford Explorer the day

after the robbery (*id.* at 43) -- at which time he had a knife

bearing Mr. Spates's in his back left pocket. (*Id.* at 11-13, 45.)

Additionally, Rourk-Moore admitted to driving the Explorer during

the robbery. (*Id.* at 59.) In this context, Detective Ricci's cross-

examination testimony -- that was purportedly prejudicial to

Petitioner -- was neither fundamentally unfair nor violative of

due process.

For these same reasons of overwhelming trial proofs, Judge

Perfilio's failure to instruct the jury about Detective Ricci's

Rourk-Moore testimony was not constitutionally defective.

Petitioner has not shown that the trial court's decision "had a

substantial and injurious effect or influence in determining the

jury's verdict." *See Lewis*, 348 F.3d at 359 (citing *Brecht*, 507

U.S. at 637). That is, even if the trial court erred in not

instructing the jury on this point, the error was harmless. The

record was replete with evidence of guilt. A jury instruction about

Detective Ricci's comment on Rourk-Moore's fear would not have excluded any of that incriminating evidence from jury deliberations.

In this context of the whole trial and its evidence, the Fair Trial Claim and the Rule 404(b) Claim do not show fundamental unfairness or due process deprivation. Detective Ricci's cross-examination testimony about Rourk-Moore, and Judge Perfilio's jury instruction determination about the Detective's testimony, neither resulted in a fundamentally unfair proceeding nor violated due process. The jury reasonably found Petitioner guilty on all counts.

For all these reasons, the Court denies Grounds One and Two.

### 3. Ground Three: Trial Court Error By Failing To *Sua Sponte* Instruct The Jury Regarding Testimony About The Photographic Array Shown To Mr. Spates

Ground Three alleges trial court error in not giving jurors a *sua sponte* limiting instruction about Mr. Spates's cross-examination use of "mug shot" when describing the police photo identification. (ECF No. 1 at 12 ("Limiting Instruction Claim").)

At trial, Petitioner's counsel asked Mr. Spates about the photo arrays that police had shown to him in the hospital. In responding, Mr. Spates twice stated that police had provided him a group of "mug shots." (ECF No. 15-20 at 55, 56.) Defense counsel did not object. (*Id.*) Mr. Spates further described the array: "[T]he [the officer] pulled out this -- it was a brown thing -- *I don't know what it's called* - - it had pictures in it." (*Id.* at 60

15

(emphasis added).) Judge Perfilio did not offer a *sua sponte* instruction contemporaneously or in his final jury instructions. *Smith*, 2012 WL 2196669, at *3.

During direct appeal, the Appellate Division rejected the Limiting Instruction Claim. The court ruled that Mr. Spates's use of the phrase "mug shot" in a seemingly colloquial sense was not of "such magnitude to warrant reversal." *Smith*, 2012 WL 2196669, at *3. Relying on state law, the Appellate Division explained:

> Fleeting references to impermissible information, such as a description of a photograph as a mug shot, will generally not be considered error of such magnitude to warrant reversal. Here, the reference occurred twice but both references were fleeting. Ordinarily, we require much more than a brief mention to a mug shot to find that the trial record has been unilaterally tainted. Here, an objection by counsel or a *sua sponte* instruction by the trial judge might have focused the attention of the jury on the possibility of a prior criminal record.

*Id.* (internal citations omitted).

This Court denies Ground Three on the merits for three reasons.

(a) *Limiting Instruction Claim - Not Reviewable In Habeas*: This Claim is not subject to federal habeas review, to the extent Petitioner asserts that Judge Perfilio's *sua sponte* instruction determination violated state law. *See Estelle,* 502 U.S. at 67-68; *Romano,* 512 U.S. at 12-13; *Keller,* 251 F.3d at 413. State court evidence-related determinations, such as not giving a limiting

instruction on Mr. Spates's use of the phrase "mug shot," are normally matters of state law and are not reviewable in federal habeas proceedings. *See Engle v. Isaac,* 456 U.S. 107 (1982); *Henderson v. Kibbe,* 431 U.S. 145 (1977); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 309 (3d Cir.), *cert. denied,* 502 U.S. 902 (1991).

For the same reasons explained *supra* with respect to Grounds One and Two, Petitioner cannot make the requisite constitutional showing of due process deprivation or fundamental unfairness to render the Limiting Instruction Claim reviewable on habeas.

(b) *Limiting Instruction Claim - No Harmless Error Showing*: Even in cases where constitutional errors in evidence-related state court rulings have occurred, they are subject to "harmless error" analysis. *Neder v. United States,* 527 U.S. 1, 8-11 (1999); *Smith v. Horn,* 120 F.3d at 416-17 (1997). This principle includes failure-to-instruct contexts. *See*, *e.g.*, *Lewis*, 348 F.3d at 359 (citing cases). Under the harmless error test, a petitioner must demonstrate constitutional error that resulted in "actual prejudice," which asks whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Eley v. Erickson,* 712 F.3d 837, 847 (3d Cir. 2013) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). *See also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *Bond,* 539 F.3d at 275-76; *Adamson v. Cathel,* 633 F.3d 248, 260 (3d Cir. 2011) (citing *O'Neal v. McAninch,* 513 U.S. 432, 438 (1995)).

17

Here, any purported error from Judge Perfilio's *sua sponte* instruction determination was harmless, for the following reasons.

(i)     *The Witness's Use Of "Mug Shot" Was Colloquial*:

When Mr. Spates used "mug shot" twice, a reasonable juror could have understood him to mean the colloquial sense of that phrase. When describing the in-hospital photo identification, Mr. Spates testified: "[The officer] pulled out this -- it was a brown thing - *I don't know what it's called* - - it had pictures in it." (ECF No. 15-20 at 60) (emphasis added). Viewed in this context, Mr. Spates's use of "mug shot" strikes this Court as much different than when an officer refers to a mug shot, usually implying that a person has prior criminal history. *See, e.g.*, *Heath v. Arvonio*, No. 94-93, 1995 WL 328129, at *5-6 (D.N.J. May 26, 1995) ("[O]ne of the victims of the robbery ... testified that she had seen pictures at the police station. In response to a question, she said, 'Yes, I saw six mugshots' ... [I]t is not reasonable to assume that the jury drew an inference of prior criminal behavior from the [witness's] testimony that prejudiced their result. Her references to 'mug shots' are not sinister statements about petitioner's past. A more convincing explanation is that 'mug shot' is the common expression for police photographs. [The witness's] statements reflect no more, or no less") (citation omitted).

(ii)     *The Phrase "Mug Shot" Did Not Suggest Any Prior Criminal History Of Petitioner*: The record demonstrates no link

18

between Mr. Spates's use of "mug shot" and any prior criminal history of Petitioner. There was thus no basis for the jury to conclude that Petitioner had a criminal history. In fact, as the Appellate Division noted, "a *sua sponte* instruction by the trial judge might have focused the attention of the jury on the *possibility* of a prior criminal record." *Smith*, 2012 WL 2196669, at *3 (emphasis added).

(iii) *The Evidence Of Petitioner's Guilt Was Overwhelming*: "The evidence implicating [Petitioner] as Spates's assailant was overwhelming." *Id*. Consequently, even if Judge Perfilio erred by omitting a *sua sponte* instruction, such error was harmless when balanced against the overwhelming evidence of Petitioner's guilt. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law"). For example, the knife seized from Petitioner showed that Mr. Spates was "the major contributor" to the blood on the weapon. *Smith*, 2012 WL 2196669, at *2. The DNA analyst testified that the probability of the knife's DNA belonging to someone other than Petitioner was "approximately one in 120 quintillion African-Americans." *Id*. In addition, a video surveillance camera captured the robbery. The assailant's sweatshirt in the footage was similar to the one police seized from the Explorer after Co-Defendants' arrest. *Smith*, 2015 WL 5943692, at *2. Furthermore, the victim identified Petitioner

19

as his assailant. *Id.*

This record compels the Court to conclude that Judge Perfilio's failure to give a *sua sponte* limiting instruction about "mug shot" was not an error of constitutional dimension. It did not have a substantial and injurious effect on the verdict. Any trial court error in failing to give a limiting instruction was harmless. *See, e.g., Lewis*, 348 F.3d at 359-60 (under harmless error analysis in habeas proceedings, trial court's failure to give a no-adverse-inference instruction to the jury was harmless where "the evidence implicating [defendant] was overwhelming"); *Government of the Virgin Islands v. Bellot*, 473 F. App'x 123, 127 (3d Cir. 2012) (failure to instruct the jury that it could consider a prior inconsistent statement as substantive evidence was harmless where evidence of defendant's guilt "was overwhelming").

(c) *Limiting Instruction Claim - State Court Rulings Were Not Contrary To Any Federal Precedent*: Petitioner has not cited, and this Court has not discovered, any United States Supreme Court decisions requiring a trial court to instruct the jury regarding a witness's use of "mug shot" in reference to photographic arrays when the defendant has not requested such an instruction. Moreover, an omitted instruction, notably, is less likely to be prejudicial than a misstatement of the law. *Henderson*, 431 U.S. at 155. This means that "a petitioner seeking habeas relief based on a trial court's failure to give a particular instruction has an 'especially

20

heavy' burden of demonstrating that the failure to give the instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment." *Kellum v. Pierce*, 24 F. Supp.3d 390, 404 (D. Del. 2014) (citing *Henderson*, 431 U.S. at 154-55). Given the lack of Supreme Court holdings pertinent to Ground Three -- *i.e.*, opinions squarely addressing a trial court's duty to *sua sponte* instruct the jury on a witness's use of "mug shot" in the absence of a defendant's request for such an instruction -- the state court decisions on the Limiting Instruction Claim were not contrary to, or an unreasonable application of, clearly established federal law.

For all of these reasons, the Court denies Ground Three.

### 4. Ground Seven: Trial Court Error In Allowing Prosecutor To Use A Photographic Lineup

Ground Seven argues that Judge Perfilio erred when he allowed the prosecutor to introduce testimony concerning the photo lineup without introducing any taped or written recording of the conversation between Mr. Spates and the officer conducting the identification. (ECF No. 1 at 18 ("Lineup Evidence Claim").)

Petitioner raised the Lineup Evidence Claim on direct appeal. (ECF No. 15-3 at 2 and 8-9.) The Appellate Division rejected it as meritless and "without sufficient merit to warrant discussion in a written opinion." *Smith*, 2012 WL 2196669, at *2.

The record contradicts Petitioner's contention that the

prosecutor introduced the photo array without evidence of the "words exchanged between [Mr. Spates] and the officer." (ECF No. 1 at 18.)

On cross-examination, defense counsel questioned Mr. Spates regarding the statement accompanying his in-hospital photo identification:

> Counsel: And the question [that police asked you in your hospital bed] was, No. 4, "*did you recognize anyone in the photographs as being the person you saw commit the robbery/assault on March 6th*?" And *your answer* was "*I'm not really sure. I would need to see him in person. He was really short.*" That was your answer, right?
>
> Mr. Spates: *That was what I had told them in the hospital* until he showed me the picture and I said that's him.

(ECF No. 15-20 at 55-56) (emphasis added).

Thus, contrary to Ground Seven's contentions, Mr. Spates' statement to police at the time of the photo identification *was* presented to the jury. As such, this Court is compelled to agree with the Appellate Division that the Lineup Evidence Claim is "without sufficient merit." *Smith*, 2012 WL 2196669, at *2.

Furthermore, Petitioner has not shown fundamental unfairness or due process deprivation warranting habeas review. *See Estelle,* 502 U.S. at 67-68; *Romano,* 512 U.S. at 12-13; *Keller,* 251 F.3d at 413. It is clear, in the context of trial, not only that the jury *did* receive "tape recordings or written statements ... exchanged

22

between the victim and the officer" (ECF No. 1 at 18) but also
that Petitioner received a fair trial and the jury reasonably found
him guilty on all counts. *See*, 2015 WL 2196669, at *3.

For these reasons, this Court denies Ground Seven.

### B. **Ground Four: Excessive Sentence**

Ground Four argues that "[t]he sentence imposed was
manifestly excessive." (ECF No. 1 at 14 ("Excessive Sentence
Claim").) Specifically, Petitioner argues that Judge Perfilio
improperly applied aggravating factors in violation of
Petitioner's "right to a fair trial." (*Id.*)

On direct appeal, Petitioner argued that: Count IV (unlawful
weapon possession) should have merged with Count V (weapon
possession for an unlawful purpose) and with Count I (armed
robbery); and his fifty year imprisonment on Count I was excessive.
*Smith*, 2012 WL 2196669, at *4; ECF No. 15-1 at 2 and 38-46. The
Appellate Division rejected his argument.

The court first set forth the governing New Jersey law as to
state appellate review of excessive sentence claims. (*Id.* at *4-
6.) Applying those principles, the court "identif[ied] no basis to
disturb the sentence." *Id.* at *6. The Appellate Division ruled
that Judge Perfilio properly imposed an extended term and that
aggravating and mitigating factors supported the fifty year term.
*Id.* at *4. Specifically, the Appellate Division explained:

Here, defendant met the minimum qualifications

23

> [under N.J.S.A. 2C:44-3a and N.J.S.A. 2C:44-4c] for ... an extended term. He was twenty-five years of age when he robbed Spates at knifepoint. He had been convicted of four offenses in North Carolina. All prior convictions occurred after ... defendant's eighteenth birthday, and the last conviction occurred ... well within the ten-year requirement for a persistent offender ...
>
> The term selected by the trial judge is ... legal [under] N.J.S.A. 2C:43-7a(2). The fifty-year term is supported by a history of violent behavior undeterred by repeated convictions and two prior periods of incarceration.

*Smith*, 2012 WL 2196669, at *6-7.

Short of a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence present questions of state law over which this Court has no jurisdiction under § 2254. Petitioner's challenge to sentencing "for failure to properly weigh the aggravating and mitigating factors is not reviewable here." *See Jenkins v. Bartkowski*, No. 10-4972, 2014 WL 2602177, at *21 (D.N.J. June 11, 2014). Petitioner "has presented no cogent argument why his sentence is unconstitutional in this regard, other than general allegations that the sentencing court did not properly weigh the aggravating and mitigating factors." *See id.*; ECF No. 1 at 14. Moreover, "Petitioner's sentence is not grossly disproportionate to the crime he committed. Indeed, extended sentences are common and are not contrary to legitimate penological schemes." *Id.*

24

Therefore, "even if the Court were to read an Eighth Amendment argument into [Ground Four], it would not state a violation of federal constitutional limitations." *Id. See also Chapman v. United States*, 500 U.S. 453, 465 (1991); *Gibbs v. Bartkowski*, No. 11-1137, 2018 WL 2002786, at *15 (D.N.J. Apr. 30, 2018), *reconsideration denied*, 2018 WL 3201782 (D.N.J. June 29, 2018).

Petitioner's fifty-year sentence is not unconstitutional under the governing standards. First, this sentence was not arbitrary. Rather, it was supported by Judge Perfilio's determinations that: "[t]he statutory requirements for an extended term have been met," "defendant is a persistent offender," and "the aggravating factors clearly, convincingly and substantially outweigh[] the non-existent mitigating factors." (ECF No. 15-25 at 9.) As Judge Perfilio explained:

> [T]he defendant was seen coming out of a van parked almost in front of the check-cashing place as if he was laying in wait for somebody to come out with money ... [T]his was a pure act of violence for no apparent reason but for your own satisfaction ... The protection of the public is at risk ... because there is a prior criminal record ... The public needs to be protected from people like you.

(*Id.* at 9, 11, 12.) Second, the sentence is within NERA's permissible range on the robbery charge. N.J. Stat. Ann. § 2C:44-3a.

The New Jersey courts' adjudication of this issue was therefore neither contrary to nor an unreasonable application of,

clearly established Supreme Court precedent. *See Velez v. Lagana*, No. 12-0430 (DRD), 2015 WL 2344674 at *12 (D.N.J. May 14, 2015) ("Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254") (internal citations omitted). Petitioner cites to no constitutional provision or federal law to support his Excessive Sentence Claim.

For these reasons, the Court denies Ground Four.

## C. Ground Five: Deprivation Of Right To Fair Trial When A Sleeping Juror Remained On The Jury And Deliberated.

Ground Five argues that Petitioner's constitutional "right to trial by an impartial jury was violated when a sleeping juror was allowed to continue sitting and ultimately deliberate on defendant's guilt." (ECF No. 1 at 16 ("Sleeping Juror Claim").)

On the second day of trial, Petitioner told his defense counsel, Joel C. Seltzer, Esquire, that a juror appeared to be sleeping. During Detective Ricci's direct examination, Mr. Selzter brought the issue to Judge Perfilio's attention at sidebar. (ECF No. 15-21 at 41-42 (counsel: "she's falling asleep and yawning, and she had her eyes closed yesterday").) The prosecutor did not observe the juror sleeping and could not corroborate Petitioner's assertions. Judge Perfilio stated the court would "keep a record."

(ECF No. 15-21 at 41-42 and 53-54; *Smith*, 2012 WL 2196669, at *3.)
When the sidebar occurred, the prosecutor was in the process of
asking the Detective to identify "[crime scene] picture[s] already
in evidence ... [that were taken] while [police] were processing
the scene" (ECF No. 15-21 at 50-51).

Later that same morning, Rourk-Moore's counsel alerted Judge
Perfilio that one of the jurors might be sleeping. (ECF No. 15-21
at 53-55 ("That juror, she's like nodding off. I know you're paying
attention to her, I know you're watching, but she's -- she's really
not into the game here ... I seem to see her close her eyes and
open them a few seconds later").) At another sidebar, the following
exchange occurred:

> Court: What do you want to do? ... Do you want
> me to question her?
>
> Co-Defendant's Counsel: Maybe we could break
> for lunch now. Maybe this is a good time.
>
> Court: Do you want to break for lunch?
>
> Mr. Seltzer: Sure.
>
> Co-Defendant's Counsel: Okay.
> (sidebar concluded)
>
> Court: Ladies and gentlemen, we're going to
> break for lunch early to give you a chance to
> get a little bit of fresh air, if you need it.
> You know, we've all noticed that some of you
> have been a little bit nodding off, and I know
> some parts of this are not all that exciting,
> but you have to really pay attention and try
> to be as alert as you can about all of this
> ... If you need to get yourself a cup of
> coffee, or need a break, take a drink of water,

27

> something, we have to do that in order to
> protect the rights of the defendants as well
> as the rights of the State in prosecuting the
> case. Okay?

(ECF No. 15-21 at 41-42, 53-56.) Counsel neither requested a *voir dire* of the juror nor sought any corrective measures other than breaking for lunch. (*Id.* at 55; *Smith*, 2012 WL 2196669, at *3-4.)

On direct appeal, the Appellate Division rejected the Sleeping Juror Claim because the court could "discern no error." *Smith*, 2012 WL 2196669, at *3-4. The court ruled that, "viewed in context of the entire trial, including the efforts taken by the trial judge to address the problem, we discern nothing suggest[ing] that defendant did not receive a fair trial." *Id.* at *3, 4. There was no "direct evidence that the juror actually slept through critical portions of the trial," and defense counsel never requested "more affirmative measures to assure that the juror had not missed critical evidence." *Id.* at *4. The Appellate Division meticulously summarized the record supporting its determination:

> Once placed on notice of the possibility that
> a juror might be having difficulty giving her
> full attention to the testimony, ... the trial
> judge took extra care to observe the juror. On
> one occasion, the judge specifically asked the
> juror "are you all right?" She replied that
> she was "alright." On another occasion, the
> judge adjourned the trial early for lunch and
> instructed the jury before it departed that he
> had noticed that "some of you have been a
> little bit nodding off[.]" The judge reminded
> them that it was very important that they pay
> close attention to the evidence. On another
> occasion, the judge motioned to the adjacent

28

> juror to give the "sleeping" juror a nudge.
> The targeted juror responded by closing her
> eyes and pointing to her ears to suggest she
> was listening.
>
> ***
>
> The trial judge did not ignore the situation.
> He monitored the behavior of the identified
> juror, took reasonable measures to assure that
> she and the entire jury remained alert, and
> reminded the jury of the importance of paying
> close attention to the evidence.

*Id.* at *3, 4.

With respect to whether Petitioner was deprived of a constitutional right as a result of the sleeping juror, "[t]he United States Supreme Court has opined that 'a federal court's review into ... a criminal jury's deliberations is a decidedly limited enterprise,' primarily because '[a]llegations of juror misconduct, incompetency, or inattentiveness ... seriously disrupt the finality of the [trial] process.'" *Durham v. Phelps*, No. 07-370, 2009 WL 3271370, at *7 (D. Del. Oct. 9, 2009) (quoting *Tanner v. United States*, 483 U.S. 107, 120 (1987)). "Sleeping is a form of jury misconduct, and a defendant must demonstrate both that the juror in question ignored an essential portion of the trial and that the defendant was prejudiced by the juror's misconduct." *United States v. Sheika*, No. 05-cr-67, 2005 WL 2562969, at *4 (D.N.J. Oct. 7, 2005), *aff'd*, 304 F. App'x 135 (3d Cir. 2008) (internal citations omitted); *see also Gaston v. MacFarland*, No. 04-1168, 2005 WL 1828660, at *7 (D.N.J. July 29, 2005). A sleeping

juror should be removed if the sleep has made it "'impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial.'" *Gaston*, 2005 WL 1828660, at *7 (citing *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000)). However, "[a] defendant's 'general assertion that jurors slept through parts of the critical presentation of the defendant's evidence and cross examination are too vague to establish prejudice.'" *Id.* (internal citation omitted). The Sleeping Juror Claim fails on the merits for these reasons:

(a) *Petitioner Has Not Shown The Juror Slept Through Substantive Elements Of Either Party's Case, And The Trial Judge Monitored The Situation*: Given the record of inconsistent sightings among the judge, counsel, and Petitioner as to the juror's purported sleeping, "[s]ome greater indication than is currently in the record that [the juror] was, in fact, asleep, as opposed to daydreaming or concentrating with eyes shut, would have significantly strengthened the argument that a hearing was warranted." *See Ciaprazi v. Senkowski*, 151 F. App'x 62, 64 (2d Cir. 2005). Moreover, even if the juror was sleeping, it was arguably not during a portion of trial essential to constitutionally adequate deliberations. At those times, the prosecutor was asking Detective Ricci to identify photos of evidence the jury had already received. (ECF No. 15-21 at 51-52 (Prosecutor: "Judge, the purpose of this is to assist the jury,

30

that's all." Mr. Seltzer: "They have the knife and they have a picture already." Court: "Well, they're not going to have both of them ... [Y]ou have two pictures of the knife." Prosecutor: "One is a larger, and I'm not sure if the jury wants the details. That's the only purposes is to assist the jury").) Detective Ricci's identification of the exhibits (*id*. at 50-51) did not go to substantive elements of either the State's or Petitioner's cases. Thus, even if the juror had been sleeping at that time, she ultimately received the crime scene evidence for deliberations. This situation is not so significant as to deprive Petitioner of his right to a fair trial. *See, e.g., Gaston*, 2005 WL 1828660, at *7 ("The record indicates the juror was inattentive for only a short period of time and neither the juror, petitioner's lawyer, or the reviewing courts considered this significant"); *Morfiah v. City of Philadelphia*, 667 F. App'x 782, 784 (3d Cir. 2016) ("The trial judge and counsel for both parties discussed the sleeping juror. [Petitioner's] attorney agreed that the juror did not need to be removed ... Under these circumstances, the trial judge properly addressed the sleeping juror"); *Burns v. Warren*, No. 13-1929, 2016 WL 1117946, at *25-26 (D.N.J. Mar. 22, 2016).

Furthermore, Judge Perfilio took extra care as to the subject juror. (ECF No. 15-21 at 50, 55-56; *Smith*, 2012 WL 2196669, at *3 (expressly asking the juror "are you all right?," to which she responded affirmatively; breaking early for lunch; signaling for

31

the adjacent juror to give the "sleeping" juror a nudge, upon which the latter motioned that she was listening).)

Thus, even assuming the juror was sleeping, Petitioner was not prejudiced by this fact, nor was he denied a fair trial. *See United States v. Ortiz*, No. 92-0592, 1993 WL 303286, at *2 (E.D. Pa. Aug. 5, 1993) *aff'd*, 27 F.3d 560 (3d Cir. 1994) (collecting cases) ("Generally, courts have been reluctant to reverse a conviction or grant a new trial when it has been alleged that jurors have slept during portions of the trial"). Petitioner's generalized claim of "the juror nodding off" (ECF No. 1 at 16) does not undermine the Appellate Division's factual determination about "the absence of direct evidence that the juror actually slept through critical portions of the trial." *Smith*, 2012 WL 2196669, at *4. Thus, this Court presumes, as it must, that the state court determined correctly that the juror did not sleep significantly at trial. 28 U.S.C. § 2254(e)(1).

(b) *The State Court Rulings As To The Sleeping Juror Issue Were Not Contrary To Any Federal Precedent*: Petitioner has not cited, and this Court has not found, any United States Supreme Court decision that either: mandates an inquiry into every instance of juror misconduct; or determines that an allegedly sleeping juror's deliberation is *per se* unconstitutionally violative of the right to fair trial.

In sum, the fact that neither Judge Perfilio nor the parties

32

addressed this issue beyond the transcript passages referenced above suggests: first, that the juror may not have been sleeping in the first instance; and second, even if the juror had been sleeping, it was for such an insignificant period of time, and during such a non-critical point in the trial, that no further discussion was warranted. Given courts' "considerable discretion in deciding how to handle a sleeping juror," *see Freitag*, 230 F.3d at 1023, and the absence of any federal precedent mandating further inquiry by Judge Perfilio, the Appellate Division's rejection of the Sleeping Juror Claim was not contrary to, or an unreasonable application of, clearly established federal law.

For these reasons, the Court denies Ground Five.

### D. Ground Six: Violation Of Sixth Amendment Right To Confrontation

Petitioner next argues that the trial court violated his Sixth Amendment right to confrontation when Detective Ricci testified as to Rourk-Moore's statement to police. (ECF No. 1 at 17 ("Confrontation Clause Claim").)

At trial, Detective Ricci testified that in Rourk-Moore's March 7, 2009 typewritten statement to police, she "indicated that she was with her ailing mother in a nursing home" at the time of the crime and denied being in Hillside when the incident occurred. (ECF No. 15-22 at 32.) The Detective said that after Rourk-Moore's first statement, she admitted that she had lied in it because

33

"[Petitioner] was in the next room and she was afraid he could hear her." (*Id.* at 33.)

During direct appeal, the Appellate Division rejected the Confrontation Clause Claim as "without sufficient merit to warrant discussion." *Smith*, 2012 WL 2196669, at *2.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...." U.S. Const. amend. VI. "[T]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (internal citations and quotation marks omitted) (emphasis omitted). "[A] criminal defendant states a ... Confrontation Clause [violation] by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness ...'" *Id.* at 680 (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

"[T]he admission of a confession of a co-defendant who did not take the stand deprive[s] the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicate[s] the defendant." *Schneble v. Florida*, 405 U.S. 427, 429–30 (1972) (citing *Bruton v. United States*, 391 U.S. 123 (1968)). Under the *Bruton* principle, admission of a co-defendant's statement at trial violates a defendant's right to confrontation

34

if: (1) the statement incriminates the defendant, and (2) the co-defendant chooses not to testify. *Bruton*, 391 U.S. at 126, 136. *See also Richardson v. Marsh*, 481 U.S. 200, 207 (1987). To implicate *Bruton,* a co-defendant's statement must incriminate the defendant "on its face," *Richardson*, 481 U.S. at 208, and must be "clearly inculpatory" or "powerfully incriminating" to the defendant. *United States v. Belle,* 593 F.2d 487, 495 (3d Cir. 1979) (quoting *Bruton,* 391 U.S. at 135). "When a co-defendant's extrajudicial statement does not directly implicate the defendant, the *Bruton* rule does not come into play." *Id.* at 493.

(a) *No Bruton Violation*: The portion of Detective Ricci's testimony relevant to Ground Six pertains to: Rourk-Moore's initial statement about her whereabouts on March 7, 2009; and her subsequent admission of lying in that first account. Those statements by Rourk-Moore are neither clearly inculpatory nor powerfully incriminating to Petitioner. They also do not directly implicate Petitioner in any crime. Detective Ricci's testimony explained that Rourk-Moore lied in her first police statement and why she did so. Nothing in that testimony directly implicated Petitioner. Thus, there was no *Bruton* violation and no Confrontation Clause violation.

(b) *No Harmless Error*: Furthermore, even assuming that admission of Detective Ricci's testimony about Rourk-Moore's statements was erroneous, errors under the Confrontation Clause

35

are subject to harmless error analysis. *Adamson,* 633 F.3d at 259-61; *see also Delaware,* 475 U.S. at 684; *United States v. Hinton,* 423 F.3d 355, 362-63 (3d Cir. 2005); *Eley,* 712 F.3d at 847. The introduction of Rourk-Moore's statements through Detective Ricci was harmless and had no real influence or actual prejudice to Petitioner. The "evidence implicating [Petitioner] as Spates's assailant was overwhelming." *Smith*, 2015 WL 5943692, at *3. The possibility of real influence or undue prejudice to Petitioner from Detective Ricci's testimony about Rourk-Moore's statements is too remote. *See Neder,* 527 U.S. at 8-11; *Smith,* 120 F.3d at 416-17; *Eley,* 712 F.3d at 847 (citing *Brecht*, 507 U.S. at 637-38); *Lewis*, 348 F.3d at 359-60; *Bellot*, 473 F. App'x at 127.

The Appellate Division's decision on the Confrontation Clause Claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor was it based on an unreasonable determination of the facts presented in the state court proceedings. This Court denies Ground Six.

### E. Ground Eight: Ineffective Assistance Of Counsel By Failing To Move For A Severance Of Co-Defendants' Trials

Finally, Petitioner argues that trial counsel rendered ineffective assistance of counsel ("IAC") by failing to move for a severance of Petitioner and Rourk-Moore's joint trial. (ECF No. 1 at 19 ("IAC Claim").)

During direct appeal, the Appellate Division reviewed the IAC

36

Claim under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984) and rejected it. *Smith*, 2015 WL 5943692, at *3.

To set forth a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an IAC claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial ... whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299. In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).

Even where a petitioner is able to show that counsel's representation was deficient, a petitioner must still affirmatively demonstrate that counsel's deficient performance prejudiced the defense. *Id*. at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. A petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "Because failure to satisfy either prong defeats an [IAC] claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002); *Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Finally, when a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (internal quotation marks omitted) (emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of IAC claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 131 S. Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*,

"through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

The Appellate Division here ruled that Petitioner's IAC Claim did not satisfy *Strickland*, determining that he had not met its prejudice prong:

> Even if defendant established a prima facie case under the first *Strickland* prong -- and we can discern no reason why his attorney would not have moved for a severance -- he has failed to establish a prima facie case under the second *Strickland* prong. In view of the overwhelming evidence of defendant's guilt, defendant has failed to establish a reasonable probability that, but for counsel's error, the result of the trial would have been different.

*Smith*, 2015 WL 5943692, at *3.

After reviewing the record, this Court finds that the Appellate Division did not unreasonably apply federal law. Petitioner did not provide sufficient evidence to establish a prima facie case that he suffered prejudice.

(a) *A Severance Motion Likely Would Have Been Unsuccessful*: Under New Jersey law, "where the evidence establishes that multiple offenses are linked as part of the same transaction or series of transactions, a court should grant a motion for severance only when [a] defendant has satisfied the court that prejudice would result." *State v. Abdi*, No. A-0857-17T3, 2018 WL 6070770, at *2 (N.J. Super. Ct. App. Div. Nov. 21, 2018) (internal citations omitted). "[C]onsiderations such as economy and judicial

expediency must be weighed when deciding a severance motion." *Id.* (internal citations omitted). Rourk-Moore was present at the crime scene with Petitioner and drove the getaway vehicle. *Smith*, 2012 WL 2196669, at *1. Thus, since Co-Defendants were part of "the same transaction," *Abdi*, 2018 WL 6070770, at *2, Judge Perfilio was not likely to have granted severance, even if counsel had requested it. Counsel cannot be found ineffective for failing to bring meritless motions, such as a severance motion here would have been. *See Johnson v. Tennis,* 549 F.3d 296, 303 (3d Cir. 2008); *United States v. Sanders,* 165 F.3d 248, 253 (3d Cir. 1999).

Additionally, Judge Perfilio was unlikely to have granted a severance due to courts' strong interest in maintaining joint trials. *See Johnson v. Tennis,* 549 F.3d 296, 302 (3d Cir. 2008) (public interest in judicial economy favors joint trials where the same evidence would otherwise be presented at separate trials of defendants charged with the same offense). *See also Zafiro v. United States,* 506 U.S. 534, 537 (1993) (there is a preference for joint trials of defendants who are indicted together, as it promotes efficiency and serves the interests of justice by avoiding scandal and inequity of inconsistent verdicts).

(b) *Evidence Of Petitioner's Guilt Was Overwhelming*: The evidence of Petitioner's guilt was so overwhelming, *Smith*, 2012 WL 2196669, at *3, that had trials for Co-Defendants' offenses occurred separately, there is no reasonable probability that the

40

outcome would have been different for him. Both trials would have shared the same evidence and witnesses, such as video surveillance tape of the crime, the knife with Mr. Spates's DNA, and Mr. Spates's in-court identification of Petitioner as the assailant. *Smith*, 2015 WL 5943692, at *1-2. Petitioner ignores the fact that police jointly arrested him and Rourk-Moore the day after the crime, in which they found incriminating evidence such as the knife. These facts compel the conclusion that Petitioner suffered no prejudice from counsel's failure to move for a severance. *See*, *e.g.*, *State v. Floyd*, No. A-1646-15T4, 2018 WL 1748327, at *1 (N.J. Super. Ct. App. Div. Apr. 12, 2018) (although trial judge's denial of severance motion was in error, the ruling did not deny defendant a fair trial "given the overwhelming evidence of defendant's guilt"); *State v. Williams*, No. A-2176-11T4, 2014 WL 941155, at *3 (N.J. Super. Ct. App. Div. Mar. 12, 2014) ("even if a severance motion had been filed, it would not have been granted" and "defendant would have been convicted because the evidence against him was overwhelming"); *State v. Pons*, 2007 WL 2847536, at *9 (N.J. Super. Ct. App. Div. Oct. 3, 2007).

(c) *The Verdicts Suggest The Jury Weighed Charges Against Petitioner And Rourk-Moore Independently As To Each Defendant*: The jury's verdicts as to each Co-Defendant's robbery-related charges

were not identical.[3] This indicates that the jury was able to compartmentalize the evidence as between Petitioner and Rourk-Moore and weigh the evidence independently as to each of them. Thus, Petitioner cannot show that counsel's failure to seek severance "had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. *See United States v. Jimenez,* 513 F.3d 62, 83 (3d Cir. 2008) ("The jury's verdict reflects that the jury was able to compartmentalize the evidence as to each defendant and each count as evidenced by the jury's acquittal on some counts and convictions on others"). *See also Park v. California,* 202 F.3d 1146, 1150 (9th Cir. 2000); *United States v. Noske,* 117 F.3d 1053, 1057 (8th Cir. 1997) ("Acquittals of some defendants on some charges and a defendant charged only with count II show the jury was able to compartmentalize the evidence").

In sum, the Appellate Division's rejection of the IAC Claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law under *Strickland*. It did not

---

[3] The jury found Petitioner guilty of: robbery in the course of committing a theft, second-degree aggravated assault, third-degree aggravated assault, and possession of a weapon. (ECF No. 15-24 at 30-31.) The jury found Rourk-Moore guilty of exercise of unlawful control over moveable property by her own conduct or as an accomplice or co-conspirator; however, they found her not guilty of robbery by her own conduct or as an accomplice or co-conspirator, and not guilty of weapon possession. (*Id.* at 31-32.)

result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner has not shown that a severance motion by his trial counsel would have undermined or changed the verdict.[4] For these reasons, the Court denies Ground Eight.

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues

---

[4] The Appellate Division made no express determination as to satisfaction of *Strickland*'s deficient performance prong. *Smith*, 2015 WL 5943692, at *3. Nevertheless, the well-established two-prong *Strickland* test requires satisfaction of both its components for a prima facie IAC claim. Given that "failure to satisfy either prong defeats an [IAC] claim" and "it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *Cross*, 308 F.3d at 315; *Judge*, 119 F. Supp. 3d at 280-81. Such is the case here. Petitioner's failure to show *Strickland* prejudice defeats the IAC Claim, rendering further discussion in this Opinion of *Strickland*'s defective performance prong unnecessary.

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim[s], a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Didiano v. Balicki*, Civil Action No. 09-2315 (FLW), 2010 WL 1752191, at *6-7 (Apr. 29, 2010) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

## VI.    **CONCLUSION**

For all of the foregoing reasons, the Petition is denied with prejudice on the merits and no certificate of appealability shall issue. An appropriate Order follows.

Dated: May 15 , 2019

Madeline Cox Arleo
United States District Judge

44